Hon. David G. Estudillo

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | | |
|---|---|---|
| HEATHER DOREEN BENDICKSON, | ) | Case No.: 21-cv-05762-DGE |
| | ) | |
| *Plaintiff*, | ) | [Removal from Pierce County Superior Court, case number 21-2-07283-8] |
| | ) | |
| vs. | ) | |
| | ) | **PLAINTIFF'S RESPONSE TO** |
| | ) | **DEFENDANTS MOTION TO** |
| VROOM, INC., and ALLY FINANCIAL, INC., | ) | **COMPEL ARBITRATION** |
| | ) | |
| *Defendants.* | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

COMES NOW Heather Doreen Bendickson ("Plaintiff") and Responds to Defendants Motion to Compel Arbitration as follows:

## I. SUMMARY OF ARGUMENT

This Court should deny Defendants' Motion to Compel Arbitration for three reasons. First, the arbitration provisions do not meet the requirements for a valid and binding contract due to lack of mutual assent. Second, even if the arbitration provisions were a valid and binding contract, grounds exist for its revocation due to procedural and substantive unconscionability. Third, Ms. Bendickson has claims against Defendants under the Magnuson-Moss Warranty Act ("MMWA") and such claims are not subject to binding arbitration.

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

## II. BACKGROUND

On September 2, 2020, Ms. Bendickson located a 2019 Kia Sportage SX Turbo that was advertised for sale by Defendant Vroom ( "Defendant") on Vroom.com. Ms. Bendickson contacted Defendant's sales department which initiated the purchase and sale process.  Complaint ¶¶ 8-11. Bendickson Decl., ¶ 4.

On September 5, 2020, Defendant's sales representative emailed Ms. Bendickson a DocuSign envelope containing 64 pages of preprinted documents including, but not limited to: Vroom Retail Purchase Agreement, Motor Vehicle Retail Installment Sales Contract, Buyers Guide identifying a warranty, Vroom 3-Month  6,000-Mile Limited Warranty, Vroom Roadside Assistance Limited Agreement, Vroom Guaranteed Asset Protection (GAP coverage), Vroom Protect Tire & Wheel Protection Service Contract, Vroom Protect Vehicle Service Protection Vehicle Service Contract, Agreement to Furnish Insurance Policy, Texas Motor Vehicle Sales Tax Exemption Certificate – for Vehicles Taken Out of State, Vroom Odometer Disclosure Statement, Application for Texas Title and/or Registration, Application for Title Only, Vroom Delivery Fee, Credit Application, Credit Score, and CARFAX Vehicle History Report. Complaint ¶ 12. Bendickson Decl., ¶ 5.  Ex. P-1.

The documents were prepared by Defendant and provided to Ms. Bendickson without explanation of their meaning or implications. Ms. Bendickson was not provided with an opportunity to negotiate any of the listed terms and was required to sign the documents and pay for the vehicle within 24 hours to complete the sale on a "take it or leave it" basis.  Complaint ¶ 13. Bendickson Decl., ¶ 6.

On September 5, 2020, Ms. Bendickson electronically signed the documents contained in the 64-page DocuSign envelope and completed payment for the vehicle. The vehicle purchase price was $32,135.27. Ms. Bendickson paid an $8,000.00 down payment.  Complaint ¶ 14. Bendickson Decl., ¶ 10.

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

2

On September 15, 2020, Defendant delivered the 2019 Kia Sportage SX Turbo to Ms. Bendickson in Tacoma, Washington. Ms. Bendickson was provided with temporary registration tags which expired the first week of November 2020. Ms. Bendickson called Defendant numerous times to inquire as to the status of the title so she could license and register the vehicle in Washington. It took three separate phone calls from Ms. Bendickson to Defendant before she was provided a second temporary tag. After the second temporary tag expired in December 2020, Ms. Bendickson called Defendant again for the status of the title so she could license and register the vehicle in Washington. Ms. Bendickson demanded the Defendant process a third temporary tag. Ms. Bendickson's third temporary tag expired at the end of January 2021. Ms. Bendickson has been unable to properly register or drive the vehicle after the third temporary tag expired because the Texas Department of Motor Vehicles allows only 3 temporary tags per vehicle identification number.  Complaint ¶¶ 18-21.  Bendickson Decl., ¶¶ 6-7.

Ms. Bendickson called Defendant numerous times to inquire about when she would receive title to the 2019 Kia Sportage so she could license and register the vehicle in Washington State, where she resides. On April 17, 2021, after more than seven months awaiting valid title, Ms. Bendickson filed a Better Business Bureau [BBB] complaint against Defendant. On April 19, 2021, Defendant responded that they would expedite resolution of the issue.  Complaint ¶ 25. Bendickson Decl., ¶ 10.

On May 5, 2021, with no progress being made, Ms. Bendickson again contacted Defendant regarding the status of her title and registration. After some time, Defendant's representative advised her that Defendant had first requested the title from the original owner on April 19, 2021, the date they responded to her BBB complaint. Defendant's representative advised Ms. Bendickson it would take up to 3 months to get the title from the original owner then another 2 months to get the title and licensing processed in Washington state. Defendant has never provided

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

3

Ms. Bendickson with the title to the vehicle contrary to Federal, Washington State, and Texas law. Complaint ¶¶ 25-27.  Bendickson Decl., ¶ 10.

## IV. AUTHORITY AND ARGUMENT

**1. The Arbitration Provisions Do Not Meet the Requirements for a Valid and Binding Contract.**

The Federal Arbitration Act (FAA) provides that a court may compel arbitration only "upon being satisfied that the making of the agreement or the failure to comply therewith is not at issue." 9 U.S.C. § 4.  The FAA policy in favor of enforcing arbitration clauses does not come into play in determining whether an agreement to arbitrate exists. *Lawson v. Life of the S. Ins. Co*., 648 F.3d 1166 (11th Cir. 2011*); Applied Energetics Inc. v. NewOak Capital Markets*, 645 F.3d 522 (2d Cir. 2011). As the Tenth Circuit has explained:

> Everyone knows the Federal Arbitration Act favors arbitration. But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated. . . .[E]ven under the FAA it remains a 'fundamental principle' that 'arbitration is a matter of contract,' not something to be foisted on the parties at all costs. *Howard v. Ferrellgas Partners*, 748 F.3d 975, 977 (10th Cir. 2014). *See also Raymond James Fin. Services, Inc. v. Cary*, 709 F.3d 382 (4th Cir. 2013); *Bank of the Ozarks, Inc. v. Walker*, 434 S.W.3d 357 (Ark. 2014).  To determine whether a party has agreed to arbitrate, the court applies state-law principles. When a party disputes whether there is a valid and enforceable arbitration agreement, the presumption of arbitrability no longer applies. *Nager v. Tesla Motors, Inc*. (D. Kan. 2019) (internal citations omitted).

No valid or enforceable arbitration agreement exists between Defendants and Ms. Bendickson because there was no mutual assent to form a legally binding contract.

*A. The Arbitration Agreement Lacked Mutual Assent because the Six Separate Arbitration Clauses Contain Conflicting and Contradictory Terms.*

"In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Formation of a valid contract requires that the parties objectively express a mutual agreement as to the contract's material terms. *See, e.g., Yakima County (West Valley) Fire*

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

4

*Protection Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388, 858 P.2d 245 (1993); *Hansen v. Transworld Wireless TV-Spokane, Inc.*, 111 Wn.App. 361, 370, 44 P.3d 929 (2002). *See also MacDonald Devin, PC v. Rice*, No. 05-14-00938-CV, 2015 WL 6468188, at *3 (Tex. App.—Dallas Oct. 27, 2015, no pet.) (mem. op.) (meeting of the minds is "the parties mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract.") "If there is no meeting of the minds on all essential terms, there is no contract. This is because an enforceable contract requires mutual assent to the essential terms and conditions thereof." *Schurr v. Austin Galleries of Ill.* 719 F.2d 571, 576 (2d Cir. 1983)

In *Dreyfuss v. Etelecare Global Solutions-U.S. Inc.*, 349 Fed. Appx. 551, 553 (2d Cir. 2009), the Second Circuit refused to compel arbitration when an employer could not demonstrate that the employee had agreed to any specific arbitration terms because the employer used multiple arbitration agreements and the employer could not show which applied to the employee. In another Second Circuit case, *Opals On Ice Lingerie v. Body Line Inc.*, 320 F.3d 362 (2nd Cir. 2003), one party signed a document calling for arbitration in New York while the other signed a document calling for arbitration in California. The Court concluded "[t]his difference is significant and indicates that there was no meeting of the minds as to an agreement to arbitrate." *Id.* at 372.

In this case, Defendant Vroom provided Plaintiff with 64 pages of documents. Ex. P-1. Plaintiff was required to review and sign the documents and complete payment for the vehicle within 24 hours to finalize her purchase of the Kia Sportage. Ex. P-2. Dispersed within the 64 DocuSign pages are six different arbitration provisions. The first version of an arbitration provision is contained in the Vroom Retail Purchase Agreement (RPA). Ex. P-3, page 4-5. The second version of an arbitration provision is contained in the Motor Vehicle Retail Installment Sales Contract (RISC). Ex. P-4, page 6. There is a third version of an arbitration provision contained in the Vroom Roadside Assistance Agreement. Ex. P-7, page 2. There is a fourth version of an arbitration provision contained in the Vroom Guaranteed Asset Protection Deficiency Waiver Addendum (GAP Coverage). Ex. P-8, page 4. There is a fifth version of an arbitration provision contained in the Vroom Protect Tire & Wheel Protection Service Contract. Ex. P-9, page 3 and page 8. There is a sixth version of an arbitration provision contained in the Vroom Protect Vehicle Service Protection Vehicle Service Contract. Ex. P-10, page 6 and page 12. Finally, there is no arbitration provision in the Buyer Guide identifying the written limited

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

5

warranty (Ex. P-5) and there is no arbitration provision in the Vroom 3-Month/6,000-Mile Limited Warranty.  Ex. P-6.  Defendant breached each of these agreements.  Ms. Bendickson has never received title to the vehicle and was deprived of the benefits of each agreement.

The terms contained in the six arbitration provisions are conflicting and contradictory. For example, the RPA arbitration provision provides that "in the event that you or Vroom are unable to resolve any dispute with one another, you and Vroom _each agree_ to resolve any and all disputes and claims through binding arbitration." Ex. P-3, page 4, emphasis added.  The RPA states that "[d]isputes and claims are broadly construed to include past, current, and/or future claims seeking equitable and/or monetary relief that relate in any way to the Vehicle or Agreement, the relationship between you and Vroom…", etc. Id.  In contrast, the RISC provides that "either you or we _may choose_ to have any dispute between us decided by arbitration and not in court or by jury trial." Ex. P-4, page 6, emphasis added.  The RISC states that "any claim or dispute, whether in contract, tort, statute, or otherwise, between you and us...which arises out of or relates to purchase or condition of this vehicle, this contract, or any resulting transaction or relationship shall, _at your or our election, shall be resolved by neutral binding arbitration_ and not by a court action." Id., emphasis added. While the RPA and RISC each state they apply to any disputes or claims between Ms. Bendickson and Vroom related to the vehicle, the two arbitration provisions are starkly opposed on whether arbitration would be mandatory or elective.

Additionally, the RPA arbitration provision provides that arbitration _will be administered_ by JAMS or the AAA (Ex. P-3, page 5, emphasis added) while the RISC provides that a consumer _can choose_ to have their claim arbitrated by either the AAA or any other organization subject to Vroom's approval. Ex. P-4, page 6, emphasis added.  The RPA arbitration provision provides that _arbitration fees will be split_ (Ex. P-3, page 5, emphasis added), while the RISC provides that _Vroom will pay_ a consumer's arbitration fees up to $5,000. Ex. P-4,  page 6, emphasis added.  The two documents glaringly conflict with regards to the material terms related to arbitration.

The RPA and the RISC make up only two of the six total arbitration clauses present in the documents provided by Defendant to Ms. Bendickson. The remaining four arbitration clauses also differ in their terms. The Vroom Roadside Assistance Limited Agreement provides for voluntary non-binding arbitration and equal cost-sharing and does not provide for a specific arbitrator.  Ex. P-7, page 2.  The GAP Coverage Addendum requires the consumer to initiate arbitration and

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

6

proposes three possible arbitrators (with no reference to JAMS or AAA) and abide by the arbitrator's decision but does not provide for how fees and costs will be split.  Ex. P-8, page 4. The Vroom Protect Tire & Wheel Protection Service Contract and Vroom Protect Vehicle Service Protection Vehicle Service Contract both state that all claims will be settled by arbitration and that the consumer must initiate arbitration by providing written notice, propose arbitrators (with no mention of JAMS or AAA), and share costs equally. Ex. P-9, page 3; Ex. P-10, page 6.

Notably, the Vroom Buyer Guide identifying the written limited warranty (Ex. P-5) and the Vroom 3-Month/6,000 Mile Limited Warranty (Ex. P-6) included in the 64 pages of documents do not contain any arbitration provision whatsoever.

Defendant breached each of these agreements.  Ms. Bendickson has never received title to the vehicle and was deprived of the benefits of each agreement.

In their moving papers, Defendants have failed to make any declarations about which of the six arbitration provisions, and what material terms, apply to this dispute.

The six arbitration clauses differ so significantly from each other regarding essential terms – whether arbitration is voluntary or mandatory, who will arbitrate the claim, how the arbitrator is chosen, and how fees and costs will be attributed – that Ms. Bendickson and Defendant could not possibly have reached a "meeting of the minds" regarding an agreement to arbitrate. Accordingly, there was no formation of a valid and binding arbitration agreement making arbitration unenforceable.

2. **Even if the Arbitration Provisions Constitute a Valid and Binding Contract, Grounds Exist for its Revocation.**

The Federal Arbitration Act provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable," but courts may decline to enforce them when grounds "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

While Washington law will enforce properly drafted arbitration agreements, unconscionable arbitration clauses like those proffered by Defendant Vroom must be voided. The

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

7

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

Washington Supreme Court has invalidated numerous arbitration agreements as "unconscionable" Aunder basic Washington contract law, despite the existence of strong federal and state policy favoring arbitration. *Hill v. Garda CL Northwest, Inc.,* 179 Wn.2d 47, 53, 308 P.3d 635 (2013); *Gandee v. LDL Freedom Enters., Inc., 176* Wn.2d 598, 293 P.3d 1197 (2013); *McKee v. AT & T Corp.,* 164 Wn.2d 372, 404, 191 P.3d 845 (2008).

### A. The Arbitration Provisions are Unconscionable and Must be Voided.

"Unconscionability is a doctrine under which courts may deny enforcement of all or part of an unfair or oppressive contract based on abuses during the process of forming a contract or within the actual terms of the contract itself." David K. DeWolf, et al., 25 Wash. Practice Series, Contract Law & Practice § 9.5 (2003). Washington recognizes two classifications of unconscionability: substantive and procedural. *See Zuver v. Airtouch Communications, Inc*., 103 P.3d 753, 759, 2004 WL 3016484, at *3 (Wash.2004) (*citing Nelson v. McGoldrick*, 127 Wash.2d 124, 896 P.2d 1258, 1262 (1995), and *Schroeder v. Fageol Motors*, Inc., 86 Wash.2d 256, 544 P.2d 20, 23 (1975)).

"Procedural unconscionability is the lack of meaningful choice including "the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms [were] hidden in a maze of fine print." *Id*. (quoting *Williams v. Walker-Thomas Furniture Co.* 350 F.2d 445, 449 (D.C. Cir. 1965)). "Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh." *Shroeder*, 86 Wn.2d at 260.

In the context of arbitration agreements, the Washington Supreme Court has clearly stated that "[e]ither substantive or procedural unconscionability is enough to void a contract." *Hill,* 179 Wn.2d at 55; *see also Gandee,* 176 Wn.2d at 603.

### i.   The Arbitration Provisions are Procedurally Unconscionable

The arbitration provisions contained in Defendant's sales agreements, warranties, and other documents are procedurally unconscionable because they constitute adhesion contracts.

An arbitration agreement may be procedurally unconscionable if it is an adhesion contract. Y*akima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 393, 858 P.2d 245 (1993). The Washington State Supreme Court established the following factors to

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

8

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

determine whether an adhesion contract exists: "(1) whether the contract is a standard form printed contract, (2) whether it was 'prepared by one party and submitted to the other on a "take it or leave it" basis', and (3) whether there was 'no true equality of bargaining power' between the parties." *Yakima*, 122 Wn.2d at 393 (quoting *Standard Oil Co. of Cal. v. Perkins,* 347 F.2d 379, 383 n.5 (9th Cir. 1965)). *See Hoffffman v. Citibank* (South Dakota), N.A., 546 F.3d 1078, 1084-85 (9th Cir. 2008) ("[I]t is plain that Citibank was in a superior bargaining position to Hoffman and that Citibank's contract was offered in such a way that Hoffman was unable to negotiate its terms. These two elements often render a contract provision oppressive, and therefore procedurally unconscionable.").

In this case, Vroom's sales representative emailed Ms. Bendickson a DocuSign envelope containing 64 pages of preprinted documents. Ex. P-1.  On page 1 of the documents contained in the 64-page DocuSign envelope, in bold, Vroom advised Ms. Bendickson "[y]ou have 24 hours to sign your documents & complete any applicable payment or the DocuSign may be voided and the hold on your vehicle released." Ex. P-2.

Ms. Bendickson was required to sign the documents to purchase the vehicle on a "take it or leave it" basis and she was not provided an opportunity to negotiate any of the terms of the agreements. Thus, there was "no true equality of bargaining power" between Ms. Bendickson and Defendant Vroom, rending the arbitration provision oppressive and procedurally unconscionable.

### ii. The Arbitration Provisions are Substantively Unconscionable

"A term is substantively unconscionable where it is 'one sided or overly harsh', 'shocking to the conscience', 'monstrously harsh' or 'exceedingly calloused'. *Gandee*, 176 Wn.2d at 603 (quoting *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 347, 103 P.3d 773 (2004)). Where substantively unconscionable terms "'pervade' an arbitration agreement, [the Courts] 'refuse to sever those provisions and declare the entire agreement void.'" *Id.*; *Hill,* 179 Wn.2d at 57- 58.

At least four of the arbitration provisions contained in Defendant's contracts, warranties, and other documents are substantively unconscionable under recent Washington State Supreme Court holdings.

First, the provisions requiring Ms. Bendickson to pay the costs of private arbitration when she would otherwise be entitled to a public and essentially free judicial forum for her claims is

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

9

substantively unconscionable. The RPA arbitration provision states that "you and Vroom will bear the administrator and arbitrator fees that each party is normally required to pay under the rules and law applicable to the proceeding." Ex. P-3, page 5.  The RISC provides that Vroom will pay up to a maximum of $5,000 in arbitration costs.  Ex. P-4, page 6. The Vroom Protect Service Contract states that "[y]ou agree to abide by the Arbitrator's decision and share the cost of arbitration equally, unless the Arbitrator directs otherwise."  Ex. P-10, page 6.

Requiring Ms. Bendickson to bear arbitration costs and fees is substantively unconscionable under numerous holdings of the Washington Supreme Court. *See Hill,* 179 Wn.2d at 56-57 (arbitration fee-splitting provision unconscionable where costs of arbitration were high and plaintiff's had limited resources); *Adler, 153* Wn.2d at 353 (Court adopted a burden-shifting analysis whereby the party seeking to avoid arbitration must present evidence showing that arbitration would impose prohibitive costs); *Gandee,* 176 Wn.2d at 605 (arbitration fees and costs substantively unconscionable); *See also AI-Satin v. Circuit City Stores, Inc.,* 394 F.3d 1254, 1261 (9th Cir. 2005) (under Washington law, arbitration provision requiring customer to split arbitration fees was unconscionable); *Luna,* 236 F. Supp. 2d at 1171-72 (arbitration fee-splitting provision weighed "heavily in favor of a finding of unconscionability" because it was likely to "drastically ... exceed the costs of pursuing the claims in court") *Shankle v. B-G Maint. Mgmt. of Colo., Inc.,* 163 F.3d 1230, 1234-35 (10th Cir. 1999) (striking arbitration clause because fee-sharing provision made the forum inaccessible to employee where he would have to pay for an arbitrator's services when he would not have to pay for a judge's services).

In *Adler*, the Washington State Supreme Court adopted a burden-shifting analysis whereby the party seeking to avoid arbitration must present evidence showing that arbitration would impose prohibitive costs. "[A]n affidavit describing [the party's] personal finances as well as fee information obtained from the American Arbitration Association" can be sufficient to meet this burden. *Adler,* 153 Wn.2d at 353.

According to the American Arbitration Association website, the cost of arbitration in this case would include a non-refundable $500 filing fee, a $1,400 non-refundable case management fee, a $500 Hearing Fee, and payment of $2,500 per day of hearing for the arbitrator.  Ex. P-11. One of Defendant's arbitration provisions would require that Ms. Bendickson pay half the cost of arbitration, which amounts to at least $4,900 if serviced by the AAA and arbitration lasts only one

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

10

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

day. Even if Defendant paid its "maximum" of $5,000 in arbitration fees per the RISC arbitration clause, that would only cover one day of proceedings. The JAMS fee schedule provides for a filing fee of $1,750 and thereafter a "case management fee" of 13 percent.  Ex. P-12.

The United States Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 90, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000). Requiring Ms. Bendickson to pay fees and costs associated with arbitration will impose a financial burden such that arbitration is prohibitive to vindicating her claims, as evidenced by her declaration. Bendickson Decl., ¶¶ 15-19. It is unconscionable to require Ms. Bendickson to pay these costs, which she wouldn't incur in a lawsuit in court, to bring her claim against Defendants for their misconduct.

Second, the arbitration provisions limiting Ms. Bendickson's rights to attorney's fees are substantively unconscionable. Both the RPA and RISC arbitration addendums provide that Ms. Bendickson shall "bear the expense of [her] own attorneys, experts and witnesses" except where applicable law allows for recovery of the fees. Ex. P-3, page 5. Ex. P-4, page 6.

Under the Supreme Court's holding in *McKee,* limitations on recovering attorney's fees are substantively unconscionable. *McKee v. AT & T Corp.,* 164 Wn.2d 372, 404, 191 P.3d 845 (2008). In *McKee*, the Court held that an arbitration clause which prohibited awarding attorney fees unless expressly provided for in a statute contravened the public policy of Washington State. Likewise, in *Adler,* the Court stated that arbitration provisions requiring parties to "bear their own respective costs and attorney's fees" undermine plaintiffs' statutory right to collect fees and are "substantively unconscionable." *Adler,* 153 Wn.2d at 355. The Court in *Adler* found that in an arbitration agreement which provided that "[t]he parties shall bear their own respective costs and attorney's fees", the provision effectively undermined a plaintiff's rights to attorney fees.

In this case, both the MMWA and the Washington Consumer Protection Act provide avenues for Ms. Bendickson to recovery her attorney's fees from Defendant. Thus, like *McKee* and *Adler*, the arbitration provision at issue here is substantively unconscionable because it limits Ms. Bendickson's right and ability to recover attorney's fees she is entitled to under Washington and federal law.

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

11

Third, the arbitration provisions unconscionably limit Ms. Bendickson's rights to damages. Defendant's arbitration provision provides that "[u]nless prohibited by law, you shall not be entitled to recover from Vroom any consequential, incidental, or punitive damages to property, or damages for loss of use, loss of time, loss of profits or income, or any other similar damage." Ex. P-3, page 4. One of the main reason corporations like Defendant want to arbitrate disputes is that arbitration often dramatically reduces their exposure to large damage awards, even when they have engaged in widespread patterns of egregious wrongdoing.

Under the Supreme Court's recent holding in *Hill,* limitations on recovering damages are substantively unconscionable. *Hill* holds that denying plaintiffs damages they would otherwise be entitled to unless those damages are "specifically *mandated* by federal or state statute or law," curbs what a Plaintiff can recover and is therefore unconscionable. *Hill,* 179 Wn.2d at 56. The language struck down in *Hill* prohibited awarding certain damages unless the law "requires," or "mandates," that those damages be awarded. Similarly, Defendant's arbitration provision removes any possibility of a customer recovering damages unless Defendant is prohibited from doing so by law. Barring Ms. Bendickson from recovering consequential, incidental, punitive and other damages unless "prohibited" by law deprives Ms. Bendickson of recovering damages that would otherwise be available under Washington law. Under the holding in *Hill,* the limitations on damages in Defendant's arbitration provision are substantively unconscionable.

Lastly, the arbitration provisions waiving Ms. Bendickson's right to a jury trial or to participate in a class action suit against Defendant is unconscionable, as it eliminates Ms. Bendickson's substantive rights.

Notably, the U.S. Supreme Court has long maintained that arbitration is only appropriate when it entails no loss of substantive statutory rights. The Court first expressed this principle in 1985 in *Mitsubishi Motors v. Soler Chrysler-Plymouth,* 473 U.S. 614 (1985), in which the Court held that a party was required to arbitrate a claim arising under the Sherman Antitrust Act. *Id.* at 640. In justifying its decision in *Mitsubishi,* the Court stated that arbitration could be ordered only if the litigant "may vindicate its statutory cause of action in the arbitral forum." *Id.* at 637. The Court further explained that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute." *Id.* at 640. *Mitsubishi*'s effective-vindication-of-substantive-rights principle expressed this same concern by making it clear that if a litigant would

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

12

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

be required to forfeit his or her substantive rights in arbitration, then the arbitration clause should not be enforced.

A ban on class litigation abrogates Ms. Bendickson's substantive statutory rights. In *Scott v. Cingular Wireless*, 160 Wn.2d 843, 847 161 P.3d 1000 (2007) the Washington State Supreme Court held that a class action waiver in an arbitration agreement was substantively unconscionable. The Court found that without class action suits, the public's ability to act as "'private attorneys general,'" as intended in the Consumer Protection Act, was eviscerated. *Id*. at 854. The Court therefore concluded the class action waiver was unconscionable in violation of public policy. *Id*. The Court also found the agreement substantively unconscionable because it effectively, if not explicitly, exculpated Cingular for potentially widespread misconduct. *Id*. at 855.

The risk of effective exculpation for widespread misconduct, astutely noted by the *Scott* Court, is precisely the effect of the arbitration clause in the instant case. Appallingly, Defendant is alleged to have engaged in extensive wrongdoing against consumers across the country. Ex. P-13. In fact, consumers have submitted over a thousand complaints about Vroom to the Better Business Bureau. Ex. P-13. Currently, Vroom's BBB Business Profile displays an F rating due to the number of unanswered and unresolved complaints filed against the business and the company's failure to address the underlying cause of its recent pattern of complaints. Id.

The decision in *Scott* has been bolstered by other courts who have affirmed the holding or who have independently come to the same conclusion. For example, Judge Gould, writing for the Ninth Circuit, recently applied *Scott* to invalidate a class action waiver *in Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213 (9th Cir. 2008). The Court affirmed the district judge's denial of T-Mobile's motion to compel arbitration. *Id*. at 1214-15.

The waiver of the right to a jury trial is also an abrogation of Ms. Bendickson's substantive rights. Defendant acknowledges in the RPA arbitration provision that "[a]rbitration is more informal than a lawsuit in court"; noting that "[a]rbitration uses a neutral arbiter instead of a judge or jury, allows for more limited discovery, and is subject to limited review by courts." Ex. P-3, page 4. By acknowledging these facts about arbitration, Defendant is aware that the provision in the sales contract substantially limits Ms. Bendickson's substantive right to discovery, a trial by judge or jury, and the right to appeal, effectively stripping her of foundational legal protections.

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

13

The arbitration provisions imposing fee-sharing, waiving attorney's fees, limiting damages, and eliminating Ms. Bendickson's right to a jury trial and class action litigation are substantively unconscionable and void. Because these void provisions pervade the arbitration clause, under the Supreme Court's holdings in *Hill* and *McKee,* the entire arbitration clause is unconscionable and void.

### 3. Claims Pursuant to the MMWA Are Not Subject to Binding Arbitration.

Ms. Bendickson has claims against Defendant under the MMWA as alleged in count six of the complaint. This Court has jurisdiction to decide claims brought under the MMWA (15 U.S.C. § 2301 et seq) by virtue of 15 U.S.C. § 2310(d).

The MMWA creates a federal cause of action for a consumer who is damaged by the failure of a supplier or warrantor to comply with a written warranty, an implied warranty, or a service contract. 15 U.S.C. § 2301(6) through (8). The sale must involve a consumer product and the seller must be a supplier. Those requirements are met in the vehicle sale at issue in this case.  Ms. Bendickson is a consumer as defined in 15 U.S.C. § 2301(3), Defendant Vroom is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5), and the 2019 Kia Sportage is a consumer product as defined in 15 U.S.C. § 2301(1). [T]o recover under Magnuson-Moss, [plaintiff] must show a violation of an express or implied warranty created and governed by state law." *Freas v. BMW of North America, LLC,* 320 F.Supp.3d 1126, 1131 (S.D. Cal. 2018); *Rubang v.Ally Fin. Inc.* (E.D. Cal. 2019); *Taliaferro v. Samsung Telecomm. Am., LLC*, 2012 WL 169704, *10 (N.D.Tex. Jan. 19, 2012).

Ms. Bendickson has a cause of action under the MMWA because Defendant has breached their written warranties, implied warranties, and the service contract related to the 2019 Kia Sportage SX Turbo. Under the authority of the FTC, binding arbitration is not permissible for MMWA claims against a warrantor. 16 CFR § 700.8.

### A. *Defective Title is a Breach of Defendant's Written Warranty Under the MMWA.*

A written warranty under the MMWA must be either (1) a written affirmation of fact or promise that a product is defect free or will meet a specified level of performance over a specified

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

14

period of time, or (2) a written undertaking to refund, repair, replace, or take other remedial action if the product fails to meet promised specifications.

The MMWA, in 15 U.S.C. § 2304(a)(1), requires Defendant, as warrantor, to remedy any defect, malfunction, or nonconformance of the subject vehicle within a reasonable time and without charge to Plaintiff, as defined in 15 U.S.C. § 2304(d).

Defendant provided a written warranty to Ms. Bendickson as defined in the MMWA. Defendant's RPA expressly states, in bold and underlined terms, that "[w]e agree to transfer to you, and you agree to accept, title and ownership of the Vehicle at Vroom's address given above." Ex. P-3, page 1. This statement is a written affirmation of fact that Defendant would transfer title to Ms. Bendickson and a promise that the vehicle was free of defective title. Later in the same agreement, Defendant asserts that "[w]hen Vroom transfers title and ownership of the Vehicle to you, you may have the Vehicle delivered to you anywhere in the lower 48 states, excluding Hawaii and Alaska." Ex. P-3, page 2. This statement serves as a reiteration of Defendant's promise that before the vehicle was to be delivered to Ms. Bendickson, Defendant would transfer valid title and ownership. In the same purchase agreement, Defendant writes that they may require certain documents "to facilitate transferring title and finalizing sale of the Vehicle." Ex. P-3, page 3. For a third time, Defendant confirms their promise to transfer title to Ms. Bendickson, to finalize the sale. In fact, Defendant charged Ms. Bendickson a "Title Fee" of $125.00, indicating that, in exchange for that fee, they would provide valid title for the vehicle. Ex. P-3, page 1.

Defendant failed to abide by their written promise to provide valid title and a vehicle lacking defect to Ms. Bendickson. The MMWA requires Defendant Vroom, as warrantor, to remedy defective title within a reasonable time and without charge to Ms. Bendickson. Defendant has repeatedly failed to do so. As such, Ms. Bendickson has a valid claim under the MMWA.

B.  *Defendant is in Breach of the Implied Warranty of Merchantability Under the MMWA.*

The MMWA defines "implied warranty" as "an implied warranty arising under State law in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). Under Washington State law RCW 62A.2-314, every used car sold by a dealer in Washington for a customer's personal use has an "implied warranty of merchantability." This means that the dealer promises the used car will be fit for ordinary driving purposes, reasonably safe, without major

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

15

defects, and of the average quality of similar cars available for sale in the same price range. RCW 62A.2-314.

Defendant improperly tried to evade the implied warranty of merchantability in their agreements with Ms. Bendickson in violation of the MMWA. The Act provides that "a warrantor may not impose any limitation on the duration of any implied warranty on the product." 15 U.S.C § 2304 (a)(2).

In the RPA Defendant states on the first page, in bold lettering, that "Vroom makes no express or implied warranties on the Vehicle, including the implied warranties of merchantability or fitness for a particular purpose, unless required by applicable law." Ex. 3, page 1. They repeat this assertion on the second page, writing "Vroom makes no other express or implied warranties on the Vehicle; and (c) there will be no implied warranties of merchantability or fitness for a particular purpose unless required by applicable law. Vroom does not have to make any repairs on the Vehicle except as required under a Limited Warranty and applicable state law." Ex. P-3, page 2.

Regardless of these assertions, an implied warranty of merchantability applies to the sale of the 2019 Kia Sportage SX Turbo and under the MMWA, the implied warranty of merchantability cannot be limited by Defendant.

The implied warranty of merchantability also remains pursuant to the terms listed in Defendant's own contract. Ex. 10. See also Ex. P-5. On September 5, 2020, Defendant Vroom sold Ms. Bendickson a vehicle service warranty under Vroom Protect. Ex. P-10. The warranty agreement states:

IMPLIED WARRANTY OF MERCHANTABILITY: The Implied Warranty of Merchantability on the Covered Vehicle is not waived if the Agreement has been purchased within ninety (90) days of the purchase date of the Covered Vehicle from the dealer who also sold the Vehicle.

Ex. P-10, page 12.

Ms. Bendickson purchased the Vroom Protect Vehicle Service Contract on the same date she purchased the vehicle, September 5, 2020. Accordingly, under the terms of the service contract, the implied warranty of merchantability was not waived, and applies to the 2019 Kia Sportage.

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

16

Additionally, The MMWA provides in § 2308 (a) that "[n]o supplier may disclaim or modify (except as provided in subsection (b)) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer Product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product." Defendant made a written warranty to Ms. Bendickson with regards to the vehicle, as outlined in this briefing, and entered into a service contract with Ms. Bendickson via Vroom Protect. Therefore, under the MMWA, an implied warranty of merchantability applies to the 2019 Kia Sportage.

An implied warranty of merchantability assures that a product will work for the purpose for which it is intended and exists to protect consumers from purchasing defective or misrepresented items. *Testo v. Russ Dunmire Oldsmobile, Inc.*, 16 Wn.App. 39, 43-44 (Wash. App. 1976). In this case, the implied warranty of merchantability assures that Ms. Bendickson will receive title to her car so that she can register it and use it for its intended purpose – transportation. Defendant breached that implied warranty when they repeatedly failed to provide Ms. Bendickson with valid title to the vehicle. Defendant's nonconformity with the contract description of the product – a properly titled vehicle – is a breach of the implied warranty of merchantability and is actionable as a MMWA violation.

### C. Defendant is in Breach of the Implied Warranty of Title Under the MMWA.

"[T]o recover under Magnuson-Moss, [plaintiff] must show a violation of an express or implied warranty created and governed by state law." *Freas*, 320 F.Supp.3d at 1131. The Washington State Uniform Commercial Code (UCC) provides that implicit in every sale is a warranty of title. Specifically, under RCW 62A-2-312(1), in every contract for sale there is a warranty by the seller that the title conveyed is good and its transfer rightful. RCW 62A-2-312(1)(a). This warranty also assures that the goods will be delivered free from any security interest or other lien or encumbrance unless the buyer has knowledge of the encumbrance at the time of contracting. RCW 62A-2-312(1)(b).

Defendant represented that it had valid title to transfer ownership of the vehicle to Ms. Bendickson when it did not. Under Washington law, the implied warranty of title applies to the

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

17

1  vehicle in question and the vehicle does not meet that warranty. Defendant's breach of the implied
2  warranty of title is actionable under the MMWA.

3
4      D.  *Under the Federal Trade Commission ("FTC") Rules, Binding Arbitration is Not*
5          *Permissible for MMWA Claims*

6      The FTC interprets the MMWA in Title 16, Chapter I, Subchapter G, Part 700 of the Code
7  of Federal Regulations. 16 CFR § 700.

8      In 16 CFR § 700.8, the FTC expressly prohibits binding arbitration in MMWA claims,
9  stating:

10         "<u>A warrantor shall not indicate in any written warranty or service contract either</u>
11         <u>directly or indirectly that the decision of the warrantor, service contractor, or any</u>
12         <u>designated third party is final or binding in any dispute concerning the warranty or</u>
13         <u>service contract</u>. Nor shall a warrantor or service contractor state that it alone shall
14         determine what is a defect under the agreement. Such statements are deceptive since
15         section 110(d) of the Act, 15 U.S.C. 2310(d), gives state and federal courts
16         jurisdiction over suits for breach of warranty and service contract."

16  16 CFR § 700.8, emphasis added.

17     The FTC reiterates that a mechanism of informal dispute settlement procedures cannot be
18  binding, stating in Section § 703.5, that: "[d]ecisions of the Mechanism <u>shall not be legally binding</u>
19  on any person." 16 CFR § 703.5, emphasis added. The FTC Rules require that "[t]he warrantor
20  shall not incorporate into the terms of a written warranty a Mechanism that fails to comply with
21  the requirements contained in §§ 703.3 through 703.8 of this part." 16 CFR § 703.2.

21     Multiple state and federal courts have also held that the MMWA forbids binding arbitration
22  of written warranty disputes. *Breniser v. W. Recreational Vehicles*, Inc., 2008-2 Trade Cas. (CCH)
23  ¶ 76,452 (D. Or. Dec. 12, 2008) (mag.); *Rickard v. Teynor's Homes, Inc.*, 279 F. Supp. 2d 910,
24  921 (N.D. Ohio 2003); *Browne v. Kine Tyson's Imports, Inc.*, 190 F. Supp. 2d 827, 831 (E.D. Va.
25  2002); *Pitchford v. Oakwood Mobile Homes, Inc.*, 124 F. Supp. 2d 958, 963–964 (W.D. Va. 2000);
26  *Koons Ford of Baltimore, Inc. v. Lobach*, 919 A.2d 722, 735–737 (Md. 2007); *Henry v. Gateway,*
27  *Inc.*, 979 A.2d 287 (Md. Ct. Spec. App. 2009); *Parkerson v. Smith*, 817 So. 2d 529 (Miss. 2002).
28

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

18

In defiance of the FTC rules, Defendant writes in bold lettering in the RPA that "in the event that you and Vroom are unable to resolve any dispute with one another, you and Vroom each agree to resolve any and all disputes and claims through binding arbitration, unless you expressly reject this arbitration provision in writing within 30 days in accordance with subsection (k) below." Ex. P-3, page 4, emphasis added). They reiterate this "requirement" on the next page, writing that, "[t]he arbitrator's decision is final and binding, except for any right of appeal provided by the FAA." Ex. P-3, page 5.

Defendant states the same in its Vroom Protect Vehicle Service Contract with Ms. Bendickson, writing: "[t]he decision reached in arbitration will be binding." Ex. P-10, page 12, emphasis added.

Defendant concedes the fact that MMWA claims are not subject to binding arbitration in its own arbitration provision in the RPA. It acknowledges that "a dispute or claim under this provision does not include any dispute or claim that, under the MMWA, may not be the subject of a pre-dispute agreement to arbitrate." Ex. P-3, page 4.

Ms. Bendickson's claims against Defendant under the MMWA are not subject to binding arbitration pursuant to Defendant's own arbitration provision and the FTC's rules. 16 CFR §§ 700 through 703. Accordingly, Defendant's motion to compel binding arbitration should be denied.

*E. Defendant's Informal Dispute Resolution Procedure Does Not Meet the Standards Established by the FTC*

The MMWA, in 15 USC § 2310, provides for "informal dispute settlement procedures." Subsection (a)(1) states that "Congress hereby declares it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms."15 USC § 2310(a)(1). Subsection (a)(2) provides that "The [Federal Trade] Commission shall prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of this chapter applies." 15 USC § 2310(a)(2). The MMWA requires that any warrantor who wishes to enforce informal dispute settlement procedures must ensure that the procedure "meets the requirements of such rules." 15 USC § 2310(3)(b).

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

19

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

The FTC established the rules for "Informal Dispute Settlement Procedures" under the MMWA in Title 16, Chapter I, Subchapter G, Part 703 of the Code of Federal Regulations. 16 CFR § 703.

In 16 CFR § 703.3, the FTC provides minimum requirements for any "informal dispute settlement procedure", which it refers to as "the mechanism." 16 CFR § 703.3 subsection (a) of the rules requires that "[t]he Mechanism shall be funded and competently staffed at a level sufficient to ensure fair and expeditious resolution of all disputes, <u>and shall not charge consumers any fee for use of the Mechanism</u>." 16 CFR § 703.3(a), emphasis added.

Defendant's RPA, in section 15, requires that the consumer, Ms. Bendickson, share the administrator and arbitrator fees of the arbitration procedures and that the consumer bear the expense of its own attorneys, experts and witnesses. Ex. P-3, page 5. This blatantly violates the FTC minimum requirements, which state that consumers shall not be charged <u>any fee</u> for using an informal settlement dispute procedure, such as arbitration.

Additionally, the FTC rules, under 16 CFR § 703.2, require that "[t]he warrantor shall disclose clearly and conspicuously at least the following information on the face of the written warranty:

(1) A statement of the availability of the informal dispute settlement mechanism;

(2) The name and address of the Mechanism, or the name and a telephone number of the Mechanism which consumers may use without charge;

(3) A statement of any requirement that the consumer resort to the Mechanism before exercising rights or seeking remedies created by Title I of the Act; together with the disclosure that if a consumer chooses to seek redress by pursuing rights and remedies not created by Title I of the Act, resort to the Mechanism would not be required by any provision of the Act; and

(4) A statement, if applicable, indicating where further information on the Mechanism can be found in materials accompanying the product, as provided in § 703.2(c) of this section."

16 CFR § 703.2(b)

Defendant has failed to provide any of the above listed information about arbitration in any of its warranties, contracts, and agreements with Ms. Bendickson. The limited warranty contains no arbitration provision whatsoever. Ex. P-6. The RPA provides only that "[t]he arbitration shall be administered by (i) JAMS, pursuant to its Comprehensive Arbitration Rules and Procedures

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

20

and in accordance with its expedited procedures contained in those rules, or (ii) American Arbitration Association in accordance with its Consumer Arbitration Rules" and provides URL links for the AAA and JAMS rules. Ex. P-3, page 5.  Defendant does not provide the phone number, or address of JAMS or the AAA, a statement that a consumer can contact them free of charge, their availability, or where any other information about their services can be found. This is in plain violation of the FTC's rules for informal settlement dispute procedures.

The FTC rules, under 16 CFR § 703.2, also require that "[t]he warrantor shall include in the written warranty or in a separate section of materials accompanying the product, the following information:

(1) Either

(i) A form addressed to the Mechanism containing spaces requesting the information which the Mechanism may require for prompt resolution of warranty disputes; or

(ii) A telephone number of the Mechanism which consumers may use without charge;

(2) The name and address of the Mechanism;

(3) A brief description of Mechanism procedures;

(4) The time limits adhered to by the Mechanism; and

(5) The types of information which the Mechanism may require for prompt resolution of warranty disputes."

16 CFR § 703.2(c)

Defendant provided the name and address of the AAA in its RISC arbitration provision. Ex. P-4, page 6. Defendant has failed to provide any of the other above listed information in any of its warranties, contracts, and agreements with Ms. Bendickson in plain violation of the rules established by the FTC. Because Defendant has failed to follow the minimum requirements for informal dispute settlement procedure in accordance with the FTC requirements under 16 CFR § 703.3, the arbitration clause is invalid and unenforceable.

The MMWA provides that if a supplier, warrantor, or service contractor fails to establish an informal dispute settlement procedure which meets the requirements of the FTC's rules:

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

21

 a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief— (A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

15 USC § 2310(d)

Accordingly, the claims against Defendant under the MMWA are properly resolved in the United States District Court, and not via binding arbitration.

*F. An Arbitration Requirement was not Disclosed in the Written Warranty.*

According to the Eleventh Circuit and decisions that follow it, an arbitration requirement can apply to MMWA written warranty claims only if the arbitration requirement is disclosed in the written warranty itself, and not just in the sales contract. *Cunningham v. Fleetwood Homes of Ga., Inc.*, 253 F.3d 611, 621 (11th Cir. 2001); *TGB Marine, L.L.C. v. Midnight Express Power Boats, Inc.*, 2008 WL 4649009 (S.D. Fla. Oct. 20, 2008); *Harnden v. Ford Motor Co.* 2004 WL 3647399 (E.D. Mich. Sept 8, 2004); *Larrain v. Bengal Motor Co.* 976 So. 2d 12 (Fla. Dist. Ct. App. 2008); *Tropical Ford, Inc. v. Major,* 882 So. 2d 476 (Fla. Dist. Ct. App. 2004); *Manley v. Daimler Chrysler Corp.* Case No. 2004-059092-NZ (Oakland Cty. Mich. Cir. Ct. Aug. 30, 2005); *But see Jones v. Gen. Motors Corp.,* 640 F. Supp. 2d 1124 (D. Ariz. 2009).

Following the Eleventh Circuit approach means that MMWA written warranty claims can go forward in court against any a warrantor that has not included the arbitration requirement in the written warranty. Vroom did not include an arbitration requirement in the written limited warranty it sold Ms. Bendickson. Ex. P-6.

This Court should follow the rulings of the Eleventh Circuit and order that the claims against Defendant under The MMWA are not subject to arbitration.

## V. CONCLUSION

This Court should deny Defendants' Motion to Compel Arbitration. The arbitration provisions do not meet the requirements for a valid and binding contract due to lack of mutual assent. Second, even if the arbitration provisions constitute a valid and binding contract, grounds

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

22

exist for its revocation due to procedural and substantive unconscionability. Third, Ms. Bendickson has claims against Defendants pursuant to the MMWA and such claims are not subject to binding arbitration.


*Date*: 02/18/2022          /s/ *Steven C. Hathaway*
                            Steven C. Hathaway, WSBA # 24971
                            Attorney for Plaintiff
                            3811 Consolidation Avenue
                            Bellingham, WA 98229
                            (360) 676-0529
                            shathaway@expresslaw.com

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

23

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that a true and correct copy of the foregoing Plaintiff's

Initial Disclosures has been served on this date February 18, 2022, upon:

Lorber, Greenfield & Polito, LLP
Ofelia Granados, Counsel for Defendant Vroom, Inc.,
11811 NE 1st Street, Suite 300
Bellevue, WA 98005
Ofelia A. Granados OGranados@lorberlaw.com

Troutman Pepper Hamilton Sanders, LLP
Roman D. Hernandez, Counsel for Defendant Ally Financial, Inc.
100 SW Main Street, Suite 1000
Portland, OR 97204
Roman.hernandez@troutman.com

<u>X</u> by directly emailing a true copy thereof to his or her email address listed above.

By:     ***Steven C. Hathaway***
Steven C. Hathaway, WSBA # 24971
shathaway@expresslaw.com
3811 Consolidation Avenue
Bellingham, WA 98229
(360) 676-0529
Attorney for Plaintiff Heather Bendickson

LAW OFFICES OF STEVEN C. HATHAWAY
3811 CONSOLIDATION AVENUE
BELLINGHAM, WA 98229
PHONE (360) 676-0529
FAX (360) 676-0067

PLAINTIFF'S RESPONSE TO
DEFENDANTS MOTION TO
COMPEL ARBITRATION

24