UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HEATHER DOREEN BENDICKSON,

Plaintiff,

v.

VROOM, INC., and ALLY FINANCIAL, INC.,

Defendants.

CASE NO. C21-05762-DGE

ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION

## I. INTRODUCTION

This matter comes before the Court on Defendants Vroom, Inc. and Ally Financial, Inc.'s Motion to Compel Arbitration. (Dkt. No. 19.) The Court has considered the pleadings filed in support of and opposition to the motion, and the remainder of the record, and hereby DENIES the motion.

## II. BACKGROUND

### A. Purchase of the Vehicle

Plaintiff purchased a 2019 Kia Sportage via the internet from Defendant Vroom, Inc. ("Vroom"). (Dkt. No. 1-1 at 2-3.) At the time of purchase, Plaintiff electronically signed a number of documents, including:

- a Vroom Retail Purchase Agreement ("Purchase Agreement") (Dkt. No. 25-3);
- a Motor Vehicle Retail Installment Sales Contract ("RISC") (Dkt. No. 25-4);
- a Buyers Guide (Dkt. No. 25-5);
- a Vroom 3-Month/6,000-Mile Limited Warranty ("Limited Warranty") (Dkt. No. 25-6);
- a Vroom Roadside Assistance Agreement ("Roadside Assistance Agreement") (Dkt. No. 25-7);
- a Vroom Guaranteed Asset Protection Deficiency Waiver Addendum ("GAP Addendum") (Dkt. No. 25-8);
- a Vroom Protect Tire & Wheel Protection Service Contract ("Tire Protection Contract") (Dkt. No. 25-9); and
- a Vroom Protect Vehicle Service Protection Vehicle Service Contract ("Service Contract") (Dkt. No. 25-10).

(*See* Dkt. No. 1-1 at 4.)

The vehicle purchase price was $32,135.27. (*Id.* at 5.) This figure included a title fee ($125), a license and registration fee ($151.25), an inspection fee ($7), a vehicle service contract fee ($1,463), a GAP coverage fee ($795), a tire and wheel coverage fee ($457), and a delivery fee ($599). (*Id.*)

Plaintiff asserts Defendant Ally Financial, Inc. is the assignee of the RISC who is "subject to all claims and defenses which Plaintiff has against Defendant Vroom[.]" (*Id*. at 9.)

**B. Causes of Action**

Plaintiff's first cause of action is for breach of contract for "failure to comply with the terms of the [Purchase Agreement] including . . . , failure to deliver title . . . , failure to credit and apply Plaintiff's payments . . . , assessing unauthorized fees, costs, and inspection fees, and violating state law, and federal law." (*Id*. at 10.)

Plaintiff's second cause of action is breach of the implied duty of good faith based on the Purchase Agreement "by selling the vehicle in violation of Washington state law and federal law, by failing to deliver title for the vehicle . . . , by telling Plaintiff she had no choice but to swap the vehicle for another . . . vehicle without credit for warranties, costs, or damages, or that Plaintiff . . . sell the vehicle back to Defendant Vroom." (*Id*. at 11.)

Plaintiff's third cause of action is negligent misrepresentation based on alleged intentional misrepresentations that Defendant Vroom "had good title to the vehicle"; that title would be transferred to Plaintiff; that the Washington Department of Motor Vehicles would process Plaintiff's interest for the disclosed fee; that "it was necessary for Plaintiff to purchase extra warranty policies"; and that Plaintiff had to swap the vehicle "without credit for warranties, costs, or damages" or sell it back to Defendant Vroom. (*Id*.) These misrepresentations were made to persuade Plaintiff to purchase the vehicle, unnecessary warranties and also to coerce Plaintiff into swapping the vehicle or sell it back to Defendant Vroom. (*Id*. at 12.)

Plaintiff's fourth cause of action is fraud in the inducement. The same factual allegations supporting Plaintiff's negligent misrepresentation claim are alleged as support for Plaintiff's fourth cause of action. (*Id*. at 12-13.)

Plaintiff's fifth cause of action is for breach of warranty of title for failure to deliver title to Plaintiff as promised in the Purchase Agreement. (*Id*. at 13-14.)

Plaintiff's sixth cause of action is violation of the Magnusson-Moss Warranty Act for breach of express and implied warranties that include the implied warranty of merchantability and the implied warranty of title. (*Id*. 14-15.)

Plaintiff seventh and eighth causes of action are violations of Washington's Dealers and Manufacturers Act and Washington's Consumer Protection Act, respectively. (*Id*. at 15-16.) These causes of action are based on the facts already alleged. (*Id*.)

As written, the causes of action in the Complaint are based on the Purchase Agreement and all conduct that led to Plaintiff's purchase of the vehicle and other services. Notwithstanding, Plaintiff's Response to the motion to compel arbitration asserts, "Defendant breached each of [the] agreements. [Plaintiff] has never received title to the vehicle and was deprived of the benefits of each agreement." (Dkt. No. 23 at 7.)

**C. The Agreements**

The Purchase Agreement identifies Vroom as the dealer. (Dkt. No. 25-3 at 1.) It incorporates by reference the RISC by noting that, "[t]his Agreement, along with any RISC, contains the entire agreement between you and Vroom concerning the purchase of the Vehicle." (*Id*. at 5.) In addition, "[t]o the extent there is a conflict between the terms of [the Purchase] Agreement and the terms of any applicable RISC, the RISC shall control." (*Id*.)

The RISC identifies Defendant Vroom as the "Seller/Creditor." (Dkt. No. 25-4 at 1.) But the RISC explicitly identifies that Vroom may transfer the RISC (and presumably the Purchase Agreement) to a third party. (*Id*. at 1.) Both the Purchase Agreement and the RISC identify that Texas law applies to those documents. (Dkt. Nos. 25-3 at 1; 25-4 at 1.)

The RISC contains an arbitration provision:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by court action.

(Dkt. No. 25-4 at 6.) The arbitration provision also states that Plaintiff may choose any arbitrator subject to approval of Defendants. (*Id.*) Defendants are required to pay up to $5,000 of the costs for "filing, administration, service or case management fee and [the] arbitrator or hearing fee[.]" (*Id.*)

The Buyers Guide provides a 3-month/6,000-mile limited warranty requiring Vroom to "pay 100% of the labor and 100% of the parts for the covered systems that fail during the warranty period." (Dkt. No. 25-5 at 1.) It identifies Vroom as the dealer. (*Id.*) The Buyers Guide notes that the terms of the limited warranty are contained in a separate document, which presumably is the Limited Warranty document. (*Id.*; Dkt. No. 25-6.) While there was no additional charge for the Buyers Guide and the Limited Warranty, the "Covered Vehicle" is identified as the vehicle "listed on the first page of this Warranty that must be *titled* within the United States, its Territories, or Possessions." (Dkt. No. 25-6 at 2) (emphasis added). The Buyers Guide and the Limited Warranty do not contain an arbitration clause.

The Roadside Assistance Agreement provides emergency assistance (and other perks) if the vehicle is inoperable or requires service. (Dkt. No. 25-7.) The Roadside Assistance Agreement coverage was provided at no cost to Plaintiff. (*Id.* at 1.) Vroom is identified as the Dealer. The Roadside Assistance Agreement contains an arbitration provision:

> In the event, the named Member and Motor Club disagree on the amount of a covered loss, or whether coverage is provided under this Membership, each party

> may agree to submit the dispute to voluntary and non-binding arbitration. Each party further agrees to share equally in the cost of arbitration and either party may demand a three-member-arbitration panel.

(*Id*. at 2.) This arbitration provision does not appear to cover disputes between Plaintiff and Vroom as the obligor under the Roadside Assistance program is a third party called Safe-Guard Products International, LLC. (*Id*. at 1.)

The GAP Addendum provides debt relief if the vehicle suffers damage amounting to a total loss of the vehicle. (Dkt. No. 25-8.) By its terms, it "amends and becomes part of Your Finance Agreement", which is defined as the "Installment Sales Contract." (*Id*. at 2.) The GAP Addendum identifies Texas Direct Auto Stafford as the dealer.[1] (*Id*. at 1.) The GAP Addendum identifies that "Coverage under this Addendum is not available for (a) vehicles with salvage or junk title." (*Id*.) The GAP Addendum contains an arbitration provision:

> You agree that all individual claims or disputes arising from or relating to this Addendum, whether in contract, tort, pursuant to statute, regulation, ordinance or in equity or otherwise and whether Your dispute is with the Administrator, Assignee, Dealer, or any of their respective insurers, will be settled by impartial arbitration. . . . The arbitrator is responsible for setting the ground rules and procedures for the arbitration. You agree to abide by the arbitrator's decision. . . .

(*Id*. at 4.) This arbitration provision does not identify who is responsible for paying the arbitration fees and costs.

[1] The relationship between Vroom and Texas Direct Auto Stafford is unknown. The address for Vroom in the Purchase Agreement and the address for Texas Direct Auto Stafford in the GAP Addendum appear to be the same. (Dkt. Nos. 25–3 at 1; 25-8 at 1.) Furthermore, the same employee signed the paperwork on behalf of both entities. (Dkt. Nos. 25-3 at 6; 25-8 at 1.) Moreover, as noted, the GAP Addendum appears to have amended and become part of the RISC and the Purchase Agreement. Considering this purported amendment, whether Defendant Vroom remained the seller/creditor under the RISC or whether Texas Direct Auto Stafford became the dealer under the Purchase Agreement is uncertain at this time.

The Tire Protection Contract covers damage to the vehicle's tires while driving. (Dkt. No. 25-9.) The obligor under the Tire Protection Contract is the same third party, Safe-Guard Products International, LLC, as for the Roadside Assistance Agreement. (*Id*. at 2.) The Seller is identified as Texas Direct Auto Stafford. (*Id*. at 1.) The Tire Protection Contract contains an arbitration clause:

> You agree that all individual claims or disputes arising from or relating to this Agreement, whether in contract, tort, pursuant to statute, regulation, ordinance or in equity or otherwise and whether Your dispute is with the Administrator, Provider, Seller, or the Insurance Company listed in the Settlement section, will be settled by impartial arbitration. . . . You agree to abide by the Arbitrator's decision and share the cost of arbitration equally, unless the Arbitrator directs otherwise. . . .

(*Id*. at 3.)

The Service Contract covers mechanical breakdown for 72 months or 60,000 miles. (Dkt. No. 25-10.) The seller is identified as Texas Direct Auto Stafford. (*Id*. at 1.) The obligor under the Service Contract is a third party called Minnehoma Automobile Association. (*Id*. at 2.) The Service Contract contains an arbitration provision:

> You agree that all individual claims or disputes arising from or relating to this Agreement, whether in contract, tort, pursuant to statute, regulation, ordinance or in equity or otherwise and whether Your dispute is with the Administrator, Provider/Obligor, Seller, or the insurer listed in Section 10, Settlement, will be settled by impartial arbitration. . . . You agree to abode by the Arbitrator's decision and share the cost of arbitration equally, unless the Arbitrator directs otherwise.

(*Id*. at 6.)

## III. DISCUSSION

### A. Legal Standard

The Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract[.]" 9 U.S.C. § 2.  In a motion to compel arbitration, the Court determines "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If an agreement exists, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration[.]" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original).

The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quotations omitted).  This burden is substantial, and the Court must give the party denying the existence of an agreement to arbitrate "the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quotations omitted).

**B. For Purposes of This Motion, the Court Presumes Texas Law Governs the Dispute**

In deciding whether an agreement to arbitrate exists, the Court applies ordinary state law principles governing the formation of contracts.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  A federal court sitting in diversity, as in this case, looks to the law of the forum state when making a choice of law determination.  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  In Washington, courts generally enforce contractual choice of law provisions, with certain exceptions.  *McKee v. AT & T Corp.*, 191 P.3d 845, 851 (Wash. 2008).

Both the RISC and the Purchase Agreement require courts to apply Texas and Federal Law to disputes arising from the contracts.[2] Plaintiff appears to concede this point as her Response does not address Defendants' argument that Texas law governs the dispute.[3] (Dkt. No. 19 at 4.) Therefore, the Court will apply Texas law and federal law to determine the enforceability of the arbitration clauses.

**C. Defendants Have Not Met Their Burden of Proving the Existence of a Valid Agreement to Arbitrate**

Under Texas law, formation of a valid and binding contract requires: "(1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the term; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *IHS Acquisition No. 131, Inc. v. Iturralde*, 387 S.W.3d 785, 791 (Tex. App. 2012) (citations omitted).

Plaintiff argues there was no valid arbitration agreement because there was no meeting of the minds on all essential terms of the contract. (Dkt. No. 23 at 5.) Within the 64 pages of documents Plaintiff signed to purchase the vehicle, there were six separate arbitration clauses as detailed in Section II.C. *supra*. (*Id*. at 5-6.) Defendants argue the Purchase Agreement and the RISC were the only relevant arbitration clauses to the sale of the vehicle and that those clauses contain the same essential terms. (Dkt. No. 28 at 2.)

1. Defendants Have Failed to Explain What Contracts Govern the Dispute

---

[2] The Purchase Agreement states that "You and Vroom agree that this Agreement is governed by federal law and the law of the state of Vroom's licensed dealership address shown above." (Dkt. No. 25-3 at 1.) The address of the licensed Vroom dealership is Stafford, Texas. (*Id*.) The RISC states that "Federal and Texas law apply to this contract." (Dkt. No. 25-4.)

[3] Both parties should be prepared to argue which law governs the dispute as this matter moves forward.

Under Texas law, "[d]ocuments incorporated into a contract by reference become part of that contract." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010). In addition, "[d]ocuments 'pertaining to the same transaction may be read together,' even if they are executed at different times and do not reference each other, and 'courts may construe all the documents as if they were part of a single, unified instrument.'" *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010) (citations omitted). In determining whether multiple agreements should be construed as one unified document, the Court will look to see if each agreement was "a necessary part of the same transaction." *Rieder v. Woods*, 603 S.W.3d 86, 94 (Tex. 2020) (quotations omitted).

Defendants provide no factual or legal authority, either in Texas or Washington law, explaining why the Court should look only to the arbitration provisions in the Purchase Agreement and the RISC. In particular, Plaintiff argues the GAP Addendum contains an arbitration provision that conflicts with the arbitration provisions in the RISC and Purchase Agreement. (Dkt. No. 23 at 5.) This is a significant point because the GAP Addendum states it "amends and becomes a part of Your Finance Agreement," which is defined as the "Installment Sales Contract." (Dkt. No. 25-8 at 4.) The only Installment Sales Contract would be the Purchase Agreement together with the RISC. Therefore, the question raised is whether the arbitration clause contained in the GAP Addendum was to be the governing arbitration provision or whether the arbitration clause contained in the Purchase Agreement/RISC was supposed to govern. Further confusion follows the unknown relationship between Vroom and Texas Direct Auto Stafford and which one remained the Dealer or Seller/Creditor under the GAP Addendum and the Purchase Agreement/RISC. There may be an explanation for how these agreements interact with each other, but Defendants have failed to meet their burden of providing an adequate explanation.

Defendants' failure to meet its burden on this issue controls the present motion as the Court cannot find a meeting of the minds between the parties on the issue of arbitration. Under Texas law, "'meeting of the minds' describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 530 (Tex. App. 2007) (citing *Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex. App. 1999)).[4] In doing so, the Court considers "the entire writing and attempt[s] to harmonize the provisions so all are given effect and none are rendered meaningless." *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 689 (Tex. 2022) (citing *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006)).

It is clear the GAP Addendum and Purchase Agreement/RISC contain conflicting arbitration provisions, and it is unclear whether Texas Direct Auto Stafford replaced Vroom based on the language of the GAP Addendum (which would mean Vroom no longer was a party to the arbitration clause). The arbitration provision in the GAP Addendum is silent on the splitting of fees related to arbitration, while the Purchase Agreement/RISC states Defendants are required to pay up to $5,000 of the costs for "filing, administration, service or case management fee and [the] arbitrator or hearing fee[.]" (Dkt. No. 25-4 at 6.) The arbitration provision in the GAP Addendum also states that "You are responsible for providing Administrator with at least three proposed arbitrators" and that Administrator will select the arbitrator (Dkt. No. 25-8 at 4), while the RISC states that "You may choose the American Arbitration Association, . . . or any other organization to conduct the arbitration subject to our approval." (Dkt. No. 25-4 at 6.)

---

[4] Although the Court applies Texas law throughout this Order, Washington law also requires a meeting of the minds on the essential terms of the agreement. *McEachren v. Sherwood & Roberts, Inc.*, 675 P.2d 1266, 1268 (Wash. Ct. App. 1984) (citations omitted).

In summary, based on the confusion resulting from the interplay between the GAP Addendum and the Purchase Agreement/RISC and on the conflicting arbitration clauses, the Court finds and concludes there was not a meeting of the minds regarding the terms of arbitration.

### D. Sufficiency of the Complaint and Leave to Amend

For the most part, Plaintiff's Complaint appears focused on Vroom's alleged conduct related to the formation of the Purchase Agreement/RISC and the additional "warranties" that were sold to Plaintiff. (*See generally* Dkt. No. 1-1.) But Plaintiff's Response alleges that "Defendant breached each of the[] agreements. Ms. Bendickson has never received title to the vehicle and was deprived of the benefits of each agreement." (Dkt. No. 23 at 6.) The Court interprets this additional assertion as a request for leave to amend the Complaint.

Accordingly, to the extent Plaintiff seeks to add additional claims based on the alleged deprivation of the benefits of each agreement, Plaintiff is granted leave to amend the Complaint.

## IV. CONCLUSION

Accordingly, and having considered Defendants' motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendants' Motion to Compel Arbitration (Dkt. No. 19) is DENIED.

1. Having ruled on the Motion to Compel Arbitration, Defendants' Motion to Stay Proceedings is now moot. (Dkt. No. 31.)
2. The Parties are directed to file a brief single page status report within **two weeks** of this Order informing the Court on the status discovery and whether Plaintiff's Motion to Compel Discovery Answers (Dkt. No. 34) is now moot.

3. Should Plaintiff seek leave to amend her Complaint, an amended complaint shall be filed no later than July 15, 2022.

Dated this 28th day of June 2022.

David G. Estudillo
United States District Judge